And we are ready to proceed with our first case, which is Foulah v. Barr. Good morning, and may it please the Court, my name is Ronald Darwin Ritchie, on behalf of the appellant, Matilda Genevieve Foulah. Initially, we would argue that the Board of Immigration Appeals erred in not — well, the immigration judge erred in not granting the motion to reopen, and then the Board erred in not reversing the immigration judge's decision. Why it was late? Excuse me? It was several years late. Why? Well, I guess there's two principal reasons, two main reasons. One is this change in the law didn't happen in the matter of AT, the Attorney General's decision, until 2008, and then the Board's subsequent decision in 2009. That's one factor. The other understand why that is a basis for — I understand changed country conditions, but help me understand why changes in the law provide a basis for the relief you're seeking. Yes, Your Honor. So the statute, Section 208, small letter A in Prince, number 2 in Prince of the INA, states that changed circumstances incorporates both extraordinary circumstances or — sorry, changed circumstances or extraordinary circumstances. Then in 8 CFR 208, Section 208.4, small A in Prince, 4 in Prince, breaks that down into two different options, two different possibilities. One is change — changes in the country conditions, which we argued in the motion to reopen that there were changes in the country conditions of Guinea. And then it also has, or an alternative, changes in the applicant's circumstances that materially affect the applicant's eligibility for asylum, including changes in applicable U.S. law. Our argument is twofold. One, that there were changes in the country conditions in Guinea, where the applicant's from, and also there were changes in applicable U.S. law. The matter of AT, the Attorney General's decision in the matter of AT overturned the Board's decision, previous decision in many immigration judges' decisions relating to victims of — of a female genital mutilation. So in — I know that there was a Second Circuit decision that — that discusses that. I believe that was Bob v. Mukasey. But we believe that the plain — plain reading of the law, of the language of the statute, where it says includes changes in applicable U.S. law, would be applicable here. And therefore, we believe that — that that was a reason why — and, you know, we would also argue this recent unpublished decision from the Second Circuit, Andrews v. Barr, that was just issued in January 22nd, 2020. I understand it's not controlling because it's not published, but I think it's still persuasive. Wasn't the original agency decision here consistent with matter of AT and — A&T? I mean, your client was granted withholding, and it was based on a determination that she'd suffered past persecution and would continue to have a — a fear of ongoing persecution as an FGM victim. So to the extent the law changed, didn't she get the benefit of that law in the original case? The original determination. Well, Your Honor, I would answer that yes and no. I would say, yes, she got some benefit, but she didn't get the benefit that she was eligible for, asylum. Asylum is so much different, substantially different than withholding. Of course, asylum is legal status. Withholding is not legal status, but you can't stay here. Well, wait a minute. But she wasn't denied asylum based on the merits of the FGM claim, right? It was — it was a timeliness. I mean, she just blew the deadline, right? Correct, Your Honor. So had she filed in a timely way, she would have probably gotten asylum with her withholding, right? Yes. So how is it that the change in law in AT made the difference here? It seems to me like the only thing that would be — made the difference is that she missed the deadline. Correct. We believe that she likely would have been granted asylum had she filed within the one year, but we believe that she meets an exception. And as I'm arguing, it's twofold the reasons why she meets — or the two exceptions. One is change in country conditions subsequent to the immigration judge's decision and also the change in the law. And, you know, as I mentioned, the Andrews v. Barr case, again, unpublished, but that law states — or that case held that the time limitations in motions to reopen should be equitably told. And we believe the board should have adequately explained why equitable tolling was not warranted in this exceptional case. Let me ask you this. Am I correct that she has a spouse and five children back in Guinea? Yes, I believe that is correct, Your Honor. And that's another reason why asylum is so much more significant of a benefit than withholding. With withholding, she can't apply and file an I-730 for her family members. I understand. So we believe that the board and the immigration judge erred in not granting the motion to reopen. Again, for the change — Have they been resident in Guinea for the entire time that she's been here, which I think is 2004? That's my understanding, yes. So we believe, again, there were changes subsequent to the immigration judge's decision and subsequent to the board's decision. There was also the argument that she was denied her constitutional right to due process. I know the government would argue that, well, she didn't exhaust her administrative remedies. We believe that she did, even though — and, again, for a couple of reasons. One is that it was mentioned, specifically noted in our brief to the board, that issues of due process, even though maybe they were not specifically labeled due process violations. For example, we discussed the proper weight and deference to corroborating evidence, the immigration court's failure to examine all the petitioner's testimony, the immigration court's failure to properly examine and defer to the attorney general's decision in the matter of AT. And even if this court were to believe that the petitioner failed to exhaust her administrative remedies, the court should find that the claim is collateral to a demand for benefits. Next quote, and that's quoting from the BASTEC versus FedCrop Insurance Corporation, the Second Circuit decision. This government might also argue that there's no cognizable prejudice. Well, definitely there's cognizable prejudice. The difference, again, between asylum and withholding are significant in many ways. Thank you. I have reserved two minutes. May it please the court, my name is Margo Niffen for the United States Attorney General. Your Honors, the agency did not abuse its discretion in denying this motion to reopen. A non-citizen must file a motion within 90 days of a final administrative removal order. Here, the petitioner filed her motion six years after the immigration judge's decision, and as the agency found, she failed to establish an exception to this filing deadline. The petitioner raises two main arguments in her motion. First, she claims that the Attorney General's issuance of matter of AT constituted a material change warranting reopening. She also claims an exception based on country conditions in Guinea. The agency properly rejected both of these claims. I will first address the petitioner's matter of AT argument. As the agency found, the Attorney General's issuance of matter of AT did not constitute a material change warranting reopening because there was, in fact, no change. The immigration judge denied asylum based on the one-year bar, but granted withholding of removal on the merits. In doing so, the immigration judge relied on this Court's ruling that the board had erroneously presumed that FGM was a one-time act such that its infliction necessarily rebutted the presumption of future persecution. Relying on this decision, the immigration judge found that the petitioner had experienced past persecution in the form of FGM and that her fear of future harm had not been rebutted. Accordingly, the immigration judge's decision, one month later, the Attorney General issued matter of AT, rejecting the board's underlying matter of AT decision for the same reasons that this Court did in Ba. Accordingly, the immigration judge's decision is completely consistent with the Attorney General's matter of AT decision. So are you saying that a change in law theoretically can constitute a basis for an exception to the time limitation on asylum claims? No. And that's another basis. In Wenjing, this Court made clear that a petitioner who's filing a successive asylum application must meet the motion to reopen regulations under 1003.238 CFR. Under those regulations, the change must occur in the country of nationality. Here, a change in law does not meet those regulations. And so not only is can it not meet those regulations, but there's no material change. The Court should therefore deny this aspect of the petition for review. Turning next to the petitioner's argument regarding country conditions in Guinea, with her motion, the petitioner submitted general country conditions regarding general ethnic and political upheaval in Guinea. She then clarified before the board that she was submitting this evidence in support of reopening her original FGM claim. The agency, therefore, properly found that this evidence was not material because she's already been granted protection from relief or protection from removal in the form of withholding of removal based on this original claim. In addition, the country conditions are not material. There's no link between the general conditions and the petitioner's original FGM claim. Accordingly, the petitioner, as she makes clear, is just attempting to reopen her original FGM claim to get the benefits under asylum. While understandable, this completely undermines the one-year bar and the structure of the INA. The Court should therefore deny this aspect of the petition for review. Finally, the Court lacks jurisdiction to consider the petitioner's or the agency's denial of sua sponte, and the petitioner failed to exhaust her due process claim. If there are no additional questions, in conclusion, the agency did not abuse its discretion in denying this motion to reopen, and the Court should deny the petition for review. Thank you. Briefly, one reason perhaps of why the petitioner filed her motion to reopen when she did is one has to understand her situation, her circumstances. She's a victim of female circumcision. That continues on, the effects of that continues on to affect her throughout her whole life until the day she dies. It has physical and emotional trauma and pain and suffering and complications associated with it. And as we cited in our brief, a dissent from the Fourth Circuit where a judge there had discussed about the ramifications of this terrible form of torture of female circumcision. So that's something we believe that the Board should have taken into account, the immigration judge also. And again, we believe that it's clear based on the plain language of the statute that change in U.S. law is the basis to file for asylum outside of the one year. Thank you. Unless there's further questions, I'll go ahead and sit. Thank you, Mr. Ritchie, and thank you both. We'll take the matter under advisement.